UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY CROSSON,

    Plaintiff,                            Case No. 17-cv-12361

vs.                                          HON. MARK A. GOLDSMITH

UNITED STEEL LOCAL 1299, et al.,,,

    Defendants.
_____/

**OPINION & ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 26)**

This matter is currently before the Court on Defendant United States Steel Corporation's ("U.S. Steel") motion for summary judgment (Dkt. 26). The motion is fully briefed and a hearing was held on March 15, 2018. For the following reasons, U.S. Steel's motion is granted.

**I.    BACKGROUND**

Plaintiff Terry Crosson was employed by U.S. Steel from September 9, 2002 until his termination in 2016. Compl. ¶ 11 (Dkt. 1); Def. Mot. at 1, PageID.159. As part of his employment application, Crosson signed an agreement which stated:

> I understand and agree that any claim that I might pursue upon termination of my employment or any other adverse action arising out of my employment must be brought within six (6) months of the date of my termination or such adverse action[.] I knowingly waive any limitations period which allows a longer time to bring a claim. If I am subject to a collective bargaining agreement, which requires that I bring a claim in less time, I understand that such lesser time shall apply.

Employment Application, Ex. 1 to Def. Mot., at PageID.180 (Dkt. 26-2).

Crosson was suspended on October 24, 2016; the complaint alleges that the stated reason for his suspension was that he committed an unsafe act with a catastrophic potential outcome.

1

Compl. ¶ 19 (Dkt. 1). Crosson was terminated on November 3, 2016. Id. ¶ 22. On November 7, 2016, he filed a grievance, which states, "I, Terry Crosson badge 7080, contend that the Company letter dated ___ converting my suspension to discharge is too severe a penalty." Grievance, Ex. 3 to Def. Reply (Dkt. 30-2). On April 27, 2017, Crosson's union informed him that the matter would not proceed to arbitration. See Letter from USW Union, Ex. A to Pl. Resp. (Dkt. 29-2).

Crosson filed the instant lawsuit on July 21, 2017. Among other claims, Crosson alleges that U.S. Steel violated the Workers' Disability Compensation Act of 1969, Mich. Comp. Laws. § 418.301(13), by terminating him in retaliation for seeking workers' compensation benefits. Compl. ¶¶ 47-55. U.S. Steel filed the instant motion for summary judgment, arguing only that the retaliation claim is time-barred.[1]

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[1] U.S. Steel's motion is actually one for partial summary judgment, as U.S. Steel has not moved for summary judgment on Count II. Count II alleges that U.S. Steel breached the collective bargaining agreement.

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### III. ANALYSIS

The sole issue presented is whether the statute of limitations has run on Crosson's retaliation claim. U.S. Steel argues that because Crosson agreed to bring any claim arising out of his employment "within six (6) months of the date of [his] termination or such adverse action," Employment Application at PageID.180, he was required to bring his retaliation claim by May 3, 2017 – six months after the date of his termination. Under Michigan law, "an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy." Rory v. Cont'l Ins. Co., 703 N.W.2d 23, 31 (Mich. 2005) (determining when the statute of limitations accrues for a discrimination claim). Crosson has put forth four reasons why the Court should nonetheless find that the statute of limitations has not run on his claim. The Court will address each in turn.

**A. Accrual of the claim**

Crosson argues that the Employment Application provides that he would pursue "any

3

claim . . . upon termination of [his] employment <u>or any other adverse action</u> arising out of [his] employment" within six months, and that Defendant Union Local 1299's April 27, 2017 decision not to pursue Crosson's claim to arbitration constitutes an adverse action. Pl. Resp. at 14, PageID.248 (emphasis added). He argues that an employee who is a member of a union is not effectively terminated until an employer's decision has become final through the operation of the collectively bargained-for private system of dispute resolution.

For support, Crosson relies on cases involving a claim that the union breached its duty of fair representation and a claim that the employer unfairly discharged its employee in violation of section 301 of the Labor Management Relations Act, which are referred to as hybrid § 301/unfair representation claims. <u>See</u> <u>Badon v. General Motors Corp.</u>, 679 F.2d 93, 98 (6th Cir. 1982) (analyzing the statute of limitations for a hybrid § 301/unfair representation claim); <u>Remelts v. Central Mich. Paper Co.</u>, No. G82-254, 1982 WL 2118 (W.D. Mich. Sept. 28, 1982) (same). "Before an employee may bring a § 301 claim against an employer for dismissing him in violation of the collective-bargaining agreement, the employee first must exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement." <u>Robinson v. Central Brass Mfg. Co.</u>, 987 F.2d 1235, 1239 (6th Cir. 1993). Thus, it makes sense that a hybrid § 301/unfair representation claim does not accrue until the grievance process is complete.

Crosson's retaliation claim, however, has no such exhaustion requirement. Therefore, there is no reason to view his termination as some sort of preliminary action, and the end of the grievance process as the date on which the decision is final or the date on which his claim accrues. Crosson's complaint makes clear that his <u>termination</u> is the action taken <u>by U.S. Steel</u> that led to his retaliation claim. He states that "[a] causal link exists between Plaintiff's on-the-job injury, worker's compensation benefits claim, and/or medical leave <u>and</u> his termination,"

4

Compl. ¶ 51 (emphasis in original), and that his "on-the-job injury, worker's compensation claim, and/or disability leave were significant or motivating factors in Defendant US Steel's decision to terminate his employment," id. ¶ 52. The union's decision not to take Crosson's claim to arbitration does not affect the accrual of his retaliation claim.

Thus, the statute of limitations began to run on Crosson's retaliation claim on the date of his termination: November 3, 2016.

**B. Tolling**

Crosson further argues that the statute of limitations should have been tolled while he pursued his grievance. Tolling is a "well-established legal doctrine available in certain circumstances" that makes limitations periods "flexible." Secura Ins. Co. v. Auto-Owners Ins. Co., 605 N.W.2d 308, 311 (Mich. 2000).[2]

Neither party cites a case where a court tolled the statute of limitations for a retaliation claim under Workers' Disability Compensation Act of 1969, Mich. Comp. Laws. § 418.301(13), due to an employee's utilization of grievance procedures. Instead, the parties cite to various cases involving other causes of action to argue whether tolling is appropriate. U.S. Steel points to International Union of Electrical, Radio, and Machine Workers v. Robbins & Myers, Inc., 429 U.S. 229 (1976), where a plaintiff brought a Title VII discrimination claim against her employer. Her employer argued that her claim was barred by her failure to file a charge with the Equal Employment Opportunity Commission within the statutory limitations period; among other arguments, the plaintiff responded that her utilization of grievance procedures tolls the running of the limitations period. The Supreme Court agreed with the employer as to the tolling issue,

---

[2] While "[t]he equitable tolling doctrine is read into every federal statute," Penley v. NPC International, Inc., 206 F. Supp. 3d 1341, 1347 (W.D. Tenn. 2016), the parties do not address whether this Court has the authority to toll the statute of limitations for Crosson's state-law retaliation claim.

5

reasoning that Title VII remedies are independent from other pre-existing remedies available to an aggrieved employee. Id. at 236. The Court further reasoned that "[a]dherence to the limitations period assures prompt notification to the employer of a charge of an alleged violation of Title VII," and the grievance procedure assures no such comparable notice. Id. at 240 n.14. The plaintiff had only alleged "unfair action" in her grievance, saying nothing of racial discrimination, and even if she had explicitly mentioned such discrimination, "the grievance procedure properly involves only contractual questions, and would but fortuitously implicate the Title VII standards." Id.

In response, Crosson relies on Robinson v. Central Brass Manufacturing Co., 987 F.2d 1235 (6th Cir. 1993), where the plaintiff alleged that her union breached its duty of fair representation and that her employer unfairly discharged her in violation of section 301 of the Labor Management Relations Act. The Sixth Circuit held that the statute of limitations for this hybrid § 301/unfair representation claim was tolled while the plaintiff pursued her grievances. Id. at 1243.

The Robinson court cited favorably to Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks, 782 F.2d 674 (7th Cir. 1986), and highlighted several reasons that the Frandsen court found a plaintiff's claim was not barred by the statute of limitations. First, a "no tolling" rule "would contravene the dual federal policy of promoting private resolution for disputes through internal union remedies and ensuring a judicial forum to resolves disputes." Robinson, 987 F.2d at 1242. Second, and closely related to the first reason, a "no tolling" rule would incentivize plaintiffs to bring suit in federal court before seeking internal union remedies, resulting in a "flood" of litigation. Id. Third, district courts have discretion to decide whether or not exhaustion is required before a plaintiff may bring a hybrid § 301/unfair representation

6

claim, and it is not always clear from the outset whether seeking an internal union remedy will be futile; thus, the futility of an intraunion appeal cannot be the determinative question. Id. Finally, "an internal appeals process need not provide complete relief in order to be fruitful to the plaintiff or beneficial to the judicial system." Id.

The Sixth Circuit found the Frandsen reasoning persuasive, but disagreed with the Seventh Circuit on two points: first, the Sixth Circuit held that "in order for the statute of limitations to be tolled, the internal union appeal must be able to afford the claimant some relief from the defendant[;]" second, the court emphasized that "whether to toll the limitations period is a question within the discretion of the district court . . . [e]ach case must be analyzed on its own facts in light of the three factors stressed in Clayton [v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, 451 U.S. 679 (1981)[3]] and the four-part test outlined in Frandsen." Id. at 1242. The Robinson court concluded that the limitations period against Robinson's employer was tolled until the employer denied the grievance and the union did not request arbitration, because the process "could have provided Robinson with complete relief from [her employer] – reinstatement in her job." Id. at 1243.

Both parties argue that the types of claims raised in Electrical Workers and Robinson are materially different from the retaliation claim that Crosson raises in the instant case. See Pl. Resp. at 18, PageID.252 (Dkt. 29) ("Workers Compensation retaliation actions are more akin to

---

[3] The Supreme Court in Clayton stated that although an employee alleging a violation of the collective-bargaining agreement between his union and employer must attempt to exhaust internal union procedures before bringing a § 301 claim, a district court has discretion in deciding whether to require exhaustion. The district court should consider (1) whether union officials are so hostile to the employee that he could not obtain a fair hearing; (2) whether the internal union appeals process would be inadequate to either reactivate the employee's grievance or award him the full relief he seeks under § 301; and (3) whether exhaustion would unreasonably delay his opportunity to obtain a judicial hearing on the merits. Clayton, 451 U.S. at 689.

7

hybrid § 301/unfair representation actions than to cases like Electrical Workers."); Def. Reply at 4, PageID.274 (Dkt. 30) ("[T]he Sixth Circuit's opinion [in Robinson] . . . deals only with the dismissal of the hybrid § 301 action and has a different standard for tolling and accrual. Notably, the plaintiff in Robinson did not appeal the [district court's] dismissal of her workers' compensation retaliation claim.").

Here, considering the concerns discussed by the Supreme Court and the Sixth Circuit, the Court finds that tolling is not appropriate. Crosson raises the concern that Frandsen court recognized; that is, whether failing to toll would "contravene the dual federal policy of promoting private resolution for disputes through internal union remedies and ensuring a judicial forum to resolves disputes." Robinson, 987 F.2d at 1242. But this case presents no such concern – as Crosson stated in his supplemental brief, his retaliation claim "is not a cognizable, grievable claim under the CBA." Pl. Supp. Br. at 3, PageID.295 (Dkt. 34). He had only one avenue for raising the retaliation claim – in court – and, thus, there is no concern that a failure to toll this claim while his grievance was pending would somehow undermine a policy of promoting internal union remedies.[4]

To that end, a concern that such a "no tolling" rule would incentivize plaintiffs to file lawsuits before seeking internal union remedies is unfounded in this instance. "[T]he CBA does not allow an employee like Plaintiff to allege a statutory cause of action in the context of an internal grievance procedure." Pl. Supp. Br. at 3, PageID.295. It seems that the only option available to Crosson, and other plaintiffs who wish to bring retaliation claims, is to bring their

---

[4] Crosson argues that a favorable resolution of the grievance procedure would render his retaliation claim "superfluous," Pl. Resp. at 15, PageID.249, or "moot," id. at 10, PageID.244, because he would be reinstated. However, a prevailing plaintiff on a retaliation claim under the Michigan Worker's Disability Compensation Act "is entitled to tort-based remedies, such as damages for lost wages and emotional distress." Harper v. AutoAlliance Intern., Inc., 392 F.3d 195, 204 (6th Cir. 2004).

8

claims in court. A plaintiff like Crosson who wishes to timely bring claims that cannot be grieved – like the retaliation claim – and claims that must be grieved – like a hybrid § 301/unfair representation claim – may be required to file an initial complaint and later amend it. But this is no reason to find that the statute of limitations is tolled as to the non-grievable claims.

The Court further notes that Crosson's grievance itself did not mention retaliation. The grievance does not provide U.S. Steel with any indication that Crosson suspected that his termination was retaliatory, rather than too harsh of a punishment. Unlike the plaintiff in Robinson, Crosson did not "diligently pursue[] through the internal appeals process the same claims that []he now brings in federal court." Robinson, 987 F.2d at 1244 (emphasis added).

The purpose of a statute of limitations is to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Id. (quoting Burnett v. New York Central R.R., 380 U.S. 424, 428 (1968)). To find that Crosson's grievance, which raises different concerns that the retaliation claim he now asserts, and provides no notice to U.S. Steel about such retaliation claim, tolls the statute of limitations is inconsistent with such purpose. See Electrical Workers, 429 U.S. at 240 n.14 ("Adherence to the limitations period assures prompt notification to the employer of a charge of an alleged violation of Title VII . . . [t]he grievance process assures no such comparable notice.").

Accordingly, the Court declines to find that the filing of a grievance tolled the statute of limitations for Crosson's retaliation claim.

### C. Filing of a "claim"

Crosson also argues that the Employment Action provides that "any claim" he might pursue must be brought within six months of the date of his termination or adverse action, and

9

because he filed a grievance within six months of his date of termination, he did file a claim within such time period. Pl. Resp. at 5, PageID.239. He argues that there is no indication that a "claim" means a lawsuit.

Even accepting Crosson's argument that a "claim" refers to a grievance as well as a lawsuit, he ignores the first word – <u>any</u>. Any grievance or lawsuit that Crosson wished to bring must have been filed within six months of his date of termination, and Crosson's retaliation claim was not filed within this required time period.

### D. Unconscionability

Finally, Crosson argues that the shortened statute of limitations set forth in the Employment Application is unconscionable. It provides that if Crosson is subject to a collective bargaining agreement, "which requires that [he] bring a claim in less time, [he] understand[s] that such lesser time shall apply." Employment Application at PageID.180. Crosson contends that because the collective bargaining agreement requires him to submit a grievance to his supervisor within thirty days of the date on which he first knows or should know of the facts which give rise to his grievance, the statute of limitations for him to bring a "claim" is essentially thirty days. Pl. Resp. at 10-11, PageID.244-245. Crosson argues that such a shortened time limitation is inherently unconscionable.

As discussed above, there is no requirement that Crosson file a grievance before bringing his retaliation claim. There is, therefore, no reason that the thirty-day limitation would apply to this claim, and U.S. Steel is not attempting to enforce a thirty-day statute of limitations in the instant context. The six-month limitations period that does in fact apply in this instance is not unconscionable.

In sum, Crosson's retaliation claim accrued on November 3, 2016, and the statute of

limitations, as provided by the parties' contract, expired on May 3, 2017. His claim is therefore time-barred.

## IV. CONCLUSION

For the foregoing reasons, Defendant U.S. Steel's motion for summary judgment (Dkt. 26) is granted.

SO ORDERED.

Dated: June 29, 2018  　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan  　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 29, 2018.

　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　Case Manager